THE CITY OF CHICAGO *ex rel.* ROBERT L. THRASHER, Plaintiff-Appellant, v. COMMONWEALTH EDISON COMPANY, Defendant-Appellee.

First District (5th Division)   No. 86—0506

Opinion filed August 21, 1987.

Cammilo F. Volini and Robert N. Hutchison, both of Chicago, for appellants.

Paul F. Hanzlik and Janice S. Loughlin, both of Isham, Lincoln & Beale, of Chicago, for appellee.

JUSTICE LORENZ delivered the opinion of the court:

This is an appeal from an order dismissing plaintiff's complaint. The circuit court found plaintiff to have standing but dismissed the complaint on the ground that he had failed to exhaust his administrative remedies in not initially filing his complaint before the Illinois Commerce Commission (ICC).

The issues presented for review are: (1) whether the circuit court properly found plaintiff's complaint to be within the exclusive jurisdiction of the ICC; (2) whether, assuming the circuit court did have jurisdiction, plaintiff's complaint is insufficient in law; (3) whether plaintiff has standing to bring this action; (4) whether most of plaintiff's claims are barred by the statute of limitations.

We affirm.

Defendant Commonwealth Edison (Edison) sells electricity to the city of Chicago for street lighting under a contract dated February 20, 1950, entitled "Electric Service Agreement" (contract). Plaintiff, a resident of the city, alleges that since 1950 Edison has overcharged the city for electricity supplied to the city under this contract. Specifically, plaintiff alleges that the method Edison has used to determine the quantities of electricity supplied is not in accordance with the

terms of the contract.

Quantity determinations are specified in section 8 of the contract. Section 8 provides:

"The kilowatt hours supplied for street lighting service in any month at various points of delivery shall be added together to determine the number of kilowatthours to which the charges provided under section 6 shall be applied. In all cases such kilowatthours shall be determined on the basis of the delivery voltage. Where practicable, such determination shall be made by meters which shall be provided by Edison. Where metering is impracticable, the kilowatthours shall be determined on the basis of kilowatthours supplied at each point of delivery during a representative one-hour period, as estimated by Edison, or, at the request of the city, as determined by test, multiplied by the average monthly burning hours in a 12-month period ***."

Most of the service provided under the contract is unmetered. Thus, kilowatt-hours must be estimated in accordance with the terms of the contract. The estimates are to "be based on the facilities in service at the beginning of the month." In his complaint plaintiff equated the term "facilities in service" with working streetlamps. He then asserted that there are always some burned-out bulbs and that Edison's estimates do not take this into account. Plaintiff also alleged that Edison's method of determining kilowatt-hours is violative of the Illinois Public Utilities Act (Act) (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 1 *et seq.*).

Edison moved to dismiss the complaint on the following grounds: (1) that the court lacked original jurisdiction over plaintiff's claim in that it constituted a claim for reparations; (2) that plaintiff lacked standing to bring this action because he did not meet the requirements of section 1—5—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 1—5—1); and (3) that the complaint was insufficient in law. On April 24, 1985, the circuit court found plaintiff to have standing but dismissed the complaint on the grounds that he failed to exhaust his administrative remedies in not initially filing his complaint before the ICC. Plaintiff's appeal of that order was dismissed by this court on February 14, 1986, on the ground that the order was not final and appealable. In response to a motion by plaintiff, the circuit court entered a second order on February 26, 1986, which again found that plaintiff had standing to bring the action but dismissed it on the ground that plaintiff had failed to exhaust his administrative remedies. Plaintiff is appealing that February 26, 1986, order. Edison has filed a cross-appeal questioning the trial court's finding that plain-

tiff had standing to bring this action.

OPINION

■ We first consider the contention of Edison that the subject matter of the complaint rests within the exclusive jurisdiction of the ICC. If the circuit court was correct in so holding, we need not reach the other issues raised.

The ICC is empowered by the Public Utilities Act to conduct hearings concerning any matters relating to public utilities. (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 64.)[1] Section 72 of that act authorizes the remedy of reparation to any customer who establishes that a utility has charged an excessive or unjustly discriminatory amount for its commodity or service. (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 76.) Where the claim relates to a rate charged by a utility, as defined by section 10—16 of the Act (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 10.16), this remedy consistently has been held to be exclusive. (*Klopp v. Commonwealth Edison Co.* (1977), 54 Ill. App. 3d 671, 370 N.E.2d 822.) The rule has developed that only the ICC has jurisdiction over complaints of excessive rates charged by public utilities and courts have jurisdiction over those matters only on administrative review. (*Gowdey v. Commonwealth Edison Co.* (1976), 37 Ill. App. 3d 140, 345 N.E.2d 785.) Section 73 of the Act, on the other hand, provides for judicial relief where damages other than reparations are sought based on a claim of violation of provisions of the Act, or any rule, regulation, order or decision of the ICC. (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 77.) Thus, if plaintiff's action is one of reparations within the purview of section 72, then jurisdiction is exclusively with the ICC, which would preclude relief by the circuit court. *Gowdey v. Commonwealth Edison Co.* (1976), 37 Ill. App. 3d 140, 345 N.E.2d 785.

■ In determining whether an action is within the exclusive jurisdiction of the ICC pursuant to section 72 or within the circuit court's jurisdiction pursuant to section 73, courts have consistently focused on the nature of the relief sought rather than on the plaintiff's basis for seeking the relief. (*Dvorkin v. Illinois Bell Telephone Co.* (1975), 34 Ill. App. 3d 448, 340 N.E.2d 98.) Where the essence of the claim is

---

[1]Since the initiation of this lawsuit the Public Utilities Act has again been revised. The sections which are cited in this opinion are from Illinois Revised Statutes 1983. The revised citations are as follows: Ill. Rev. Stat. 1983, ch. 111²/₃, par. 64 is now Ill. Rev. Stat. 1985, ch. 111²/₃, par. 10—101; Ill. Rev. Stat. 1983, ch. 111²/₃, par. 76 is now Ill. Rev. Stat. 1985, ch. 111²/₃, pars. 9—252, 10—109; Ill. Rev. Stat. 1983, ch. 111²/₃, par. 77 is now Ill. Rev. Stat. 1985, ch. 111²/₃, par. 5—201; Ill. Rev. Stat. 1983, ch. 111²/₃, par. 10.16 is now Ill. Rev. Stat. 1985, ch. 111²/₃, par. 3—116.

that a utility has charged too much for the service provided, the claim is for reparations. (*Klopp v. Commonwealth Edison Co.* (1977), 54 Ill. App. 3d 671, 370 N.E.2d 822.) Where the essence of the claim is not that too much has been charged for service, but rather that the utility has done something else which has wronged the plaintiff, the claim is for ordinary damages. (*Barthel v. Illinois Central Gulf Railroad Co.* (1978), 74 Ill. 2d 213, 384 N.E.2d 323.) Here, the proper form of relief, if any, is reparation under the Act.

██ Plaintiff asserts that his claim is outside the purview of section 72 of the Act because he essentially alleges fraud on the part of Edison. In light of the conspicuous absence of fraud allegations in his complaint, plaintiff was asked, at oral argument, to elaborate on this assertion. In doing so plaintiff relied exclusively upon the case of *City of Chicago ex rel. Konstantelos v. Duncan Traffic Equipment Co.* (1983), 95 Ill. 2d 344, 447 N.E.2d 789. In *Duncan* the city contracted with defendant to inspect the city's parking meters. Defendant submitted invoices to the city totalling $270,680 for inspections which were not in fact performed. The complaint alleged that "near blizzard conditions" prevented inspection of parking meters, that city officials were aware that this work was not performed, and that a conspiracy existed among these officials whereby payment was made to defendant whether or not the services were performed. Clearly that complaint alleged fraud. However, in this case plaintiff's allegation that Edison willfully breached the contract does not constitute an allegation of fraudulent conduct. Here, plaintiff is seeking a refund of allegedly excessive charges. The fact that he has chosen to label his claim as an action for breach of contract and violation of the Utilities Act does not remove this action from the exclusive jurisdiction of the ICC. (See *Klopp v. Commonwealth Edison* (1977), 54 Ill. App. 3d 671, 370 N.E.2d 822.) It is clear that plaintiff's claim is nothing more than that Edison has charged too much for electricity provided to Chicago for street lighting.

Based on the foregoing determination, we need not reach the other issues raised on appeal. The circuit court's dismissal because of want of jurisdiction is affirmed.

Affirmed.

SULLIVAN, P.J., and MURRAY, J., concur.