# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Thomas v. Peoples Gas Light & Coke Co.*, 2011 IL App (1st) 102868

---

| | |
|---|---|
| Appellate Court Caption | SHEILA THOMAS, Individually and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. PEOPLES GAS LIGHT AND COKE COMPANY, Defendant-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1-10-2868 |
| Filed | September 30, 2011 |
| Rehearing denied | November 15, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A class action alleging that defendant gas company was attempting to force the payment of debts that had been discharged in bankruptcy was improperly dismissed on the ground that the Illinois Commerce Commission had exclusive jurisdiction. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-27734; the Hon. Rita M. Novak, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Consumer Advocacy Center, P.C., of Chicago (Lance A. Raphael, Stacy M. Bardo, and Allison Krumhorn, of counsel), for appellant. |
| | |
| | Foley & Lardner, LLP, of Chicago (Michael M. Conway and Thomas C. Hardy, of counsel), for appellee. |
| | |
| Panel | PRESIDING JUSTICE STEELE delivered the judgment of the court, with opinion. |
| | Justices Neville and Salone concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiff, Sheila Thomas, appeals an order of the circuit court of Cook County dismissing her putative class action lawsuit against defendant, Peoples Gas Light & Coke Company (Peoples Gas), on the ground that the Illinois Commerce Commission (Commission) had exclusive jurisdiction over Thomas's claims that Peoples Gas was attempting to force payment of debts Thomas discharged in bankruptcy. For the following reasons, we reverse the decision of the circuit court and remand the case for further proceedings.

¶ 2                                   BACKGROUND

¶ 3     On August 10, 2009, Thomas filed a class action complaint containing the following allegations. Thomas is 60 years old and collects disability benefits. In May 2000, Thomas filed for bankruptcy; a debt she owed to Peoples Gas was discharged in the proceeding. Peoples Gas continued to attempt to collect the debt, turned off Thomas's gas, and refused to reactivate her account for several winters.

¶ 4     Thomas alleged that in 2004, Thomas again tried to reactivate her account. Peoples Gas informed Thomas she would have to pay $5,158.20, due to her past account, to reactivate service. Thomas notified Peoples Gas of the bankruptcy and sent a notice of the discharge of the debt by facsimile to Peoples Gas. However, Peoples Gas did not reactivate her account in the winter of 2004. Between the winter of 2004 and 2006, Thomas repeatedly tried to have Peoples Gas restore her service, to no avail. In February 2006, Peoples Gas demanded $8,984.92 to reinstate her account.

¶ 5     Thomas alleged that in the summer of 2006, she filed a complaint about the matter with the office of the Illinois Attorney General. Peoples Gas subsequently activated Thomas's account, providing her with heat, hot water and cooking gas. In June 2008, Peoples Gas again deactivated Thomas's gas service. Peoples Gas demanded $8,519.61 to reinstate the account and referred her account to a debt collector.

¶ 6     Moreover, Thomas alleged, on information and belief, that the accounting system

adopted by Peoples Gas in 2006 prevents employees from distinguishing amounts legitimately owed from debts discharged in bankruptcy proceedings.

¶ 7    Count I of Thomas's complaint, purportedly brought on behalf of a class of persons who have been the subject of debt collection activity by Peoples Gas since 2006 regarding amounts discharged in bankruptcy, alleged Peoples Gas violated the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2 *et seq.* (West 2004)) and violated public policy by attempting to collect debts discharged in bankruptcy. Count II of the complaint alleged intentional infliction of emotional distress.

¶ 8    On October 8, 2009, Peoples Gas filed a motion to dismiss Thomas's complaint pursuant to section 2-619 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2008)). Peoples Gas argued the Commission had exclusive jurisdiction over Thomas's claims. Peoples Gas also argued Thomas released any claims based on events prior to December 22, 2006, when Thomas executed a release settling any claims she had against Peoples Gas for $1,600.

¶ 9    On December 30, 2009, Thomas responded to the motion to dismiss. Thomas argued that the circuit court had general jurisdiction over her claims. Thomas acknowledged her release of claims against Peoples Gas, but argued the release did not apply to any claims arising after December 22, 2006.

¶ 10    On April 16, 2010, following briefing and a hearing on the matter, the circuit court granted the motion to dismiss, concluding the Commission had exclusive jurisdiction over Thomas's claims. On May 17, 2010, Thomas filed a motion to reconsider. Thomas, in addition to rearguing points raised in her opposition to the motion to dismiss, informed the circuit court she had filed an informal complaint with the Commission, which was denied. On August 25, 2010, following briefing and a hearing on the matter, the circuit court denied the motion to reconsider. On September 23, 2010, Thomas filed a timely notice of appeal with this court.

¶ 11                                    DISCUSSION

¶ 12    On appeal, Thomas argues the circuit court erred in dismissing her complaint on the ground the Commission had exclusive jurisdiction over Thomas's claims. When resolving motions to dismiss, we accept as true all well-pled factual allegations. *Morris v. Illinois Central R.R. Co.*, 382 Ill. App. 3d 884, 886 (2008). This court reviews decisions granting motions to dismiss pursuant to section 2-619 of the Code *de novo*. *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 23.

¶ 13    The Commission's exclusive jurisdiction over rates and other charges for public utility services is set forth in section 9-252 of the Public Utilities Act (Act), which provides:

> "When complaint is made to the Commission concerning any rate or other charge of any public utility and the Commission finds, after a hearing, that the public utility has charged an excessive or unjustly discriminatory amount for its product, commodity or service, the Commission may order that the public utility make due reparation to the complainant therefor, with interest at the legal rate from the date of payment of such excessive or unjustly discriminatory amount.

***

All complaints for the recovery of damages shall be filed with the Commission within 2 years from the time the produce [*sic*], commodity or service as to which complaint is made was furnished or performed, and a petition for the enforcement of an order of the Commission for the payment of money shall be filed in the proper court within one year from the date of the order ***." 220 ILCS 5/9-252 (West 2008).

The " 'evident intent and purpose of the legislature in providing a method by which reparation may be recovered and in requiring that an application therefor shall be first made to the commission, precludes an action at law for such reparation until the commission has heard a claim therefor.' " *Sheffler*, 2011 IL 110166, ¶ 41 (quoting *Terminal R.R. Ass'n of St. Louis v. Public Utilities Comm'n*, 304 Ill. 312, 317 (1922)).

¶ 14     In contrast to the Commission's jurisdiction, the jurisdiction of the circuit courts is set forth in section 5-201 of the Act, which states:

"In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, the public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom, and if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by the way of punishment. An action to recover for such loss, damage or injury may be brought in the circuit court by any person or corporation." 220 ILCS 5/5-201 (West 2008).

¶ 15     Accordingly, if a claim is for reparations, jurisdiction rests with the Commission, while jurisdiction of an action for civil damages lies in the circuit court. *Sheffler*, 2011 IL 110166, ¶ 42 (citing *Sheffler v. Commonwealth Edison Co.*, 399 Ill. App. 3d 51, 68 (2010)). A claim for reparations exists when the essence of the claim is that a utility has overcharged for a service. Alternatively, a claim for civil damages exists when the essence of the complaint is that the utility has engaged in other conduct to wrong the plaintiff. *Id.* (citing *Fluornoy v. Ameritech*, 351 Ill. App. 3d 583, 585 (2004)).

¶ 16     Thomas characterizes her complaint as a suit for civil damages properly brought in the circuit court pursuant to section 5-201. Relying on *Village of Deerfield v. Commonwealth Edison Co.*, 399 Ill. App. 3d 84, 87 (2009), Thomas argues the circuit court has jurisdiction over claims "not pertaining to excessive or unjustly discriminatory rates." However, in *Sheffler,* the Illinois Supreme Court discussed *Village of Deerfield* and concluded the Commission's jurisdiction is determined by the nature of the relief sought, not the claims or type of the damages requested. See *Sheffler*, 2011 IL 110166, ¶ 50. The *Sheffler* court also ruled that *Village of Deerfield* erred in narrowly interpreting reparations as limited to claims of excessive or discriminatory rates, concluding that complaints about the adequacy of a utility's service also fall within the scope of reparations claims. *Id.* at ¶¶ 54-56. The *Sheffler* court reasoned that adequacy of service is necessarily tied to rates and both subjects are the

focus of the Commission's regulatory scheme. *Id.*

¶ 17 In short, *Sheffler* establishes that the Commission's jurisdiction is not as strictly tied to rate-setting as Thomas argues. On the other hand, *Sheffler* is distinguishable from this case, which does not challenge the adequacy of Peoples Gas's infrastructure or services. Accordingly, the remaining question is whether the essence of Thomas's claim is that Peoples Gas has overcharged for its service or whether the claim is that Peoples Gas has done something else to wrong Thomas. A review of our case law on the distinction is instructive.

¶ 18 Our court's decision in *Village of Evergreen Park v. Commonwealth Edison Co.*, 296 Ill. App. 3d 810 (1998), discusses an example of a reparations claim. In that case, the village sued Commonwealth Edison (ComEd) for monetary and equitable relief, alleging that ComEd had wrongfully collected money for lighting equipment and services that were not provided. Specifically, the village alleged ComEd had charged it for electricity provided to streetlights that no longer existed and sought reimbursement of the monies paid to ComEd for those charges. *Id.* at 812. The circuit court dismissed the village's complaint for lack of jurisdiction, finding the Commission possessed exclusive original jurisdiction over claims for refunds or overcharges. *Id.* at 812-13.

¶ 19 On appeal, the village argued that its complaint alleged that its breach of contract claim against ComEd in charging for services not provided in ComEd's tariff was properly filed in the circuit court. *Id.* at 814. This court discussed the nonreparations cases the village cited: *Sutherland v. Illinois Bell*, 254 Ill. App. 3d 983, 985 (1993), in which the plaintiff claimed the telephone utility company charged for an " 'inside wire service' " that was never ordered, provided, or removed from her bill upon request; *Consumers Guild of America, Inc. v. Illinois Bell Telephone Co.*, 103 Ill. App. 3d 959, 960 (1981), in which the utility allegedly misrepresented consultant services sold to the plaintiff; and *Gowdey v. Commonwealth Edison Co.*, 37 Ill. App. 3d 140, 142 (1976), in which ComEd allegedly fraudulently charged customers for light bulbs. *Village of Evergreen Park*, 296 Ill. App. 3d at 813-16. The *Village of Evergreen Park* court distinguished the cases cited as involving questions of contract formation or misrepresentation. *Id.* at 815-16. This court affirmed the dismissal of the village's complaint, stating the "fact that the plaintiff labels its action a breach of contract action is not dispositive nor does it transform plaintiff's action into a civil action for damages." *Id.* at 816-17. The essence of the village's claim was that ComEd "charged too much for the service it provided"; thus, the claim fell within the exclusive jurisdiction of the Commission. *Id.* at 818.

¶ 20 In contrast, *Flournoy v. Ameritech*, 351 Ill. App. 3d 583 (2004), is an example of a civil claim that falls within the jurisdiction of the circuit court. In *Flournoy*, an inmate at the Joliet Correctional Center sued Ameritech, alleging the company deliberately terminated his collect calls shortly after they were accepted. *Id.* at 584. Under the applicable fee structure, anyone who accepted a collect call was subject to an initial fee. *Id.* Ameritech's alleged practice forced the plaintiff to make subsequent calls, which were again subject to the initial fee. *Id.* Fluornoy's complaint alleged Ameritech fraudulently collected multiple charges and was negligent in operating a telephone system that prematurely terminated telephone calls and resulted in multiple charges. The circuit court dismissed the complaint. *Id.* at 585.

¶ 21    On appeal, the *Flournoy* court found that the plaintiff's claim fell within the circuit court's jurisdiction, explaining the plaintiff did not "contest the actual rates charged as surcharges and initial calling fees, or claim those rates [were] excessive." *Id.* at 586. Rather, the "claim [was] that Ameritech collected the charges multiple times due to its practice of prematurely terminating his collect calls." *Id.* at 586. As such, *Flournoy* is a case where the plaintiff alleged the utility did something to wrong him, rather than assert a mere overcharge.

¶ 22    Here, Peoples Gas argues Thomas's claim essentially involves an overcharge. The circuit court agreed, concluding the case involved nothing more than the determination of whether Thomas's gas service was properly cut off. However, similar to the multiple charges at issue in *Flournoy* and the improper charges alleged in *Sutherland*, Thomas claims Peoples Gas is unlawfully attempting to collect a debt already discharged in federal bankruptcy proceedings. Thomas does not allege an overcharge; she alleges an unlawful charge. Unlike the negligence claims in *Sheffler*, Peoples Gas's allegedly unlawful attempt to collect a debt, either as a condition of restoring service or through a debt collector, has nothing to do with the ultilty's infrastructure, adequacy of service, or rate structure. The issue of whether Peoples Gas is unlawfully attempting to collect a debt discharged in federal bankruptcy proceedings does not involve the expert consideration of complex technological and scientific data. See *Sheffler*, 2011 IL 110166, ¶ 40. The issue raised in Thomas's claim is not committed to the Commission's expertise. Rather, Thomas asserts a claim of unlawful conduct by a public utility committed to the jurisdiction of the circuit court under section 5-201 of the Act (220 ILCS 5/5-201 (West 2008)). Thomas claims Peoples Gas violated the Consumer Fraud Act. *Sheffler* does not hold the circuit court lacks jurisdiction over such claims.[1] We conclude Thomas's claims fall within the jurisdiction of the circuit court. Thus, the circuit court erred in dismissing the complaint and denying the motion to reconsider.

¶ 23                                    CONCLUSION

¶ 24    In sum, the circuit court erred in dismissing Thomas's complaint, because her claim does not fall under the jurisdiction of the Commission. Accordingly, the judgment of the circuit court of Cook County is reversed and the cause remanded for further proceedings consistent with this opinion.

---

[1]In *Sheffler*, after the Illinois Supreme Court held the negligence allegations regarding the adequacy of ComEd's service were within the exclusive jurisdiction of the Commission, the court considered whether plaintiffs' allegations regarding ComEd's failure to restore service to Life Support Registry customers on a priority basis stated a claim pursuant to the Consumer Fraud Act (815 ILCS 505/2 *et seq.* (West 2004)). *Sheffler*, 2011 IL 110166, ¶ 57. The circuit court dismissed the Consumer Fraud Act claim for failing to state an adequate claim for relief. However, the appellate court did not specifically address the plaintiffs' Consumer Fraud Act claim. *Id.* at ¶ 59. The *Sheffler* court ultimately agreed that the plaintiffs failed to state a claim pursuant to the Consumer Fraud Act. *Id.* at ¶ 67. Notably, the *Sheffler* court (and the circuit court in that case) did not consider whether the Consumer Fraud Act claim fell within the exclusive jurisdiction of the Commission.

¶ 25        Reversed and remanded.